We will argue four points this morning. We will argue that the lower court erred in dismissing our state claim for a malicious prosecution, in holding that Kevin Jones' acquittal bar to Brady claim under 1983. We will touch lightly on the court's erroneous ruling that the statute of limitations had expired and that… I would suggest you not touch lightly on that because it ends the case if Varner is as favorable for defendants on that issue as it seems to be to me. I hear the court. The core evidence of a conspiracy to deprive Jones of his civil rights and to put him on notice that he had a claim for malicious prosecution was the handwritten field notes of Apolli Frost, the lead detective, who checked out his co-Apolli's alibi that he was with his mother the day that Dutchmeyer was murdered. He determined that it was false as he and his mother, Martha, had checked their bank records and saw transactions on December 15th. They conjured up an alibi that they were busy at four businesses on the 15th, but Frost's notes revealed that he went to those businesses and determined that the transactions occurred on the 13th and 14th. But he buried those field notes. He didn't tell a prosecutor. There was something on the 15th, though, right? He had a receipt. He had a receipt that there are other problems with, but it was way after the time of death. Which was determined… By the state medical examiner. Before Frost did his investigation of interviewing the mother? It was after. After. So, at the time of the interview, Frost would not necessarily have known that the afternoon receipt was perhaps irrelevant, or at least not exonerated. It didn't. The prosecutor, Gibbons, and everybody asked about that belated Lowe's receipt said it didn't help. Had the opinion that it did not help Don. Because of the time? Or for some other reason? Because of the time. After the time was established as before noon? Yes. Well, the autopsy preceded the delivery of the receipt. Now, a further problem about the court's ruling below on limitations is that the trial court issued several gag orders restricting our access to the field notes. We were diligent. We filed an FOI suit in Pulaski County, which is Little Rock, attempting to get the notes. And we were denied. Now, insofar as a conspiracy figure will prove, we allege 14 overt acts. Improved every one of them. Beginning with Don's denial that he killed Dirksmeyer, which is a foundational overt act. Including Frost burying the alibi field note. But what's your best evidence of an agreement? Well, when Frost and Dunn went through the lie detector test, Frost came out and asked the polygrapher if he took Dunn's heart condition into consideration. How did he know that? He had to talk. The inference is very strong. He had to talk to Dunn. Next is, and I've labeled this conspiracy a cornucopia conspiracy because everybody got a little something out of it. All different benefits. When the mayor of Russellville instructed the chief of police to take some action, to allay a rumor about her son Bubba being involved in the killing, he did that. She next talked to the prosecutor, and lo and behold, the prosecutor immediately filed an information against Kevin Jones, charging him with murder after three and a half months of no new evidence. Just out of the blue. The inference is very strong. He was motivated to do so by the mayor's conversation with him. So she got the rumor quashed about her son Bubba around Russellville. That's what she was interested in doing. That's when the conspiracy really took off. Now, it was furthered when the chief investigator of this murder visited four or five times with the Dunn defense team, unheard of for a law enforcement officer, to go help the defense prepare their defense. How do we know it's help? Well, for one thing, they had the field notes. Who do we have? Do we have depositions or something? Is this anything other than a council-triggered interview? Yes, but that just doesn't happen, Your Honor. Law enforcement aren't required. There's no compulsory process in criminal procedure in Arkansas to require a law enforcement officer to go talk and fill in the defense. How do we know when he provided the defense attorney? Well, I didn't ask him for dates. In other words, this strikes me from the briefs as just speculating. What's hard here about conspiring by helping the Dunn defense as opposed to simply being a witness or something? Well, Frost gave the Dunn defense the field notes. He gave them to nobody else. He gave them not to the investigator from the state police, Stacy Rose, who asked for them twice. But when they were obtained, they came through Frost. Not through Frost, but through the defense team giving the notes back to the prosecution in Dunn 1 and Dunn 2. Now, the entire Russellville Police Department stopped assisting the investigation. They had their plan to hang this murder on Jones and they weren't going to assist  All of a sudden, this is documented. Now, probable cause does not exist according to the Kuehl v. Burtis case in this circuit, 1999, where their minimal further investigation following a compelling lead would overwhelm probable cause against Jones. Here, a convicted felon who had assaulted a woman before and was on parole had lied about his whereabouts. He lived in the same apartment complex. He is dangerous yet. 14 months after his DNA was left on the condom wrapper in the apartment, he stalked a Arkansas Tech cheerleader for miles from the Walmart parking lot. Now, going to the position that, yes, you can maintain a 1983 action even though you've been acquitted, we turn to the United States v. Whitehill or Whit, yes, Whitehill, which is a 8th Circuit case in 2008, said that it's not a particular verdict that you're looking for. It's whether or not a defendant has received a fair trial. And the failure to expose exculpatory evidence can assure a fair trial, understood as a trial resulting in a verdict worthy of confidence. By whose lights? Judges, lawyers, or the public? This is not just a high-minded sentiment, but it evokes and implies a 6th Amendment right to a public trial because this branch of government will survive through transparency and being an informed public. Well, what is this showing that there was a conspiracy? He wasn't allowed to attend school. There were protests when Kevin went on campus. The administration wrote him a letter, and it's in the addendum. You may not attend school because it's disruptive. The public didn't accept his acquittal. Secondly, Dunn was tried twice, to the Hungarians, both times. The cause of defense was that Kevin Jones killed Durchmeyer. What is... and Jones gets what damages for that? He's not accepted as an innocent person. He's entitled for Frost not to hide evidence of Dunn's murder. You're saying that he's got a viable claim for damages because Dunn was acquitted. No, Dunn wasn't acquitted. Dunn had a mistrial. Alright. So you're saying that gives Jones a claim for damages, and I don't see that. I don't know where you're coming from with that. I'm coming from this. When you go into a courtroom, accused of murder, and the police are framing you, you're entitled... This was years later. The mistrial. Well, it was 07 to 11. Well, I guess you're taking statute of limit... you want to submit statute of limitations on the brief. I've addressed statute of limitations. There's a gag order that prevented us from getting the information. That's in the brief. There were two gag orders. That's your response to the 10-point item in the closing counsel's brief is all the things that should have put your client's team on notice? Nobody knew  prosecutor. We couldn't get it in discovery. Nobody knew it existed. The whole thing was the position of the district court in the closing counsel's brief is that when it finally was apparent that there were notes that only Stacy or somebody had seen them, there was still a time bar. We got... It was four years when we got the notes. Four years from the time he was acquitted. But they were not available until October of 2011. That was crucial proof of when Frost knew what he knew. His reproduction of the notes in the typewritten form two years later was undated and it gave the impression he just found it out, but he'd known it for two years. We say this. We say we're entitled to the evidence that should have been developed. Kevin Jones developed the DNA evidence and when he was excluded off that condom wrapper found at the crime scene Frost knew that Dunn was lying about his whereabouts. Let me tell you something. Let me advise the court this. When you're on parole the state owns you. They could have pulled Dunn in and DNA tested him right then because everybody else is clear, but they didn't do it because they knew that it wouldn't help their case against Jones. He was already excluded. That's a reasonable inference. Now we believe we have made out a good case that defeated summary judgment. This circuit has already ruled in white one and two that you may pursue a 1983 case for Brady violations even though you've been acquitted. That's the rule in this circuit. The court below didn't follow it. Hello again. Mr. Wilkinson? Wilkerson, I should say. You may proceed. First thing, White was convicted. The case is an opposite to this. Mr. White was convicted and the conviction was overturned. It's clearly in line with what this court has said in Livers v. Schenck, which is that a conviction is necessary. I want to address that first. After three years of litigating this case I'm confused as to why we're here since Mr. Jones has conceded that probable cause against him existed. He's done nothing, as the district court correctly noted, to negate the probable cause against him and he was acquitted. This leaves him with no cognizable cause of action. The fact that the probable cause existed is obvious based on the fact that he had the means, the motive, and the opportunity to commit the murder. His bloody palm print was found on the lamp, the murder weapon. He had the motive. The FBI determined that he knew of Ms. Dierksmeyer's cheating on him and that Kevin Jones matched the behavioral assessment unit, determined that he matched the profile of the suspect, the murderer. He had the opportunity. He was unaccounted for for two hours. Then there's other signs. He failed the polygraph test. Admittedly not admissible in criminal trial but it is relevant for probable cause determination. He lied initially at his alibi. He said that he was talking to Mr. Blake Walters. Blake Walters said I never saw him that day. There's other miscellaneous signs of guilt. The FBI determined that the crime scene had been staged to make it look like a rape which goes to the point that they consistently point to Dunn and say that it was a botched rape and that he left DNA on the condom wrapper. The FBI said that it was staged to look like a rape. Now to the statute of limitations which obviously ends the case, the gag order went into effect in September of 2008. The field notes the actual copy of the field notes was not shown to the prosecutor for that but the contents the exact contents of those notes were given to the state police and Todd Steffi who was a member of Jones' defense team in February of 2008. In fact Mr. Steffi went to AutoZone to check the alibi in February of 2008. Mr. Jones either knew it or could have reasonably known it and Varner says that no matter what positive act of fraud is proven, which there was none here, the fact that it was available or could have been available does not allow the statute of limitations to be told. Now that was, Varner was a fraud claim and this is not. I know that the tolling principle is generally referred to as fraudulent concealment but is it clear under Arkansas law that the fraud principle of Varner applies outside of a fraud claim? I don't know that I've ever dug that deep your honor. To me, there was really the only question was whether there was a positive act of fraud and any other. In business litigation fraudulent concealment is tossed around all the time in claims that are not fraud claims. I assume Varner reads as though it would apply more broadly but you don't know if Arkansas law has addressed that. I found Varner and I stuck with it. My reading of it is like yours. It looked to be a general term. There's no positive act of any fraud. When Frost was asked to give his, it's not common to give field notes over when you're a police officer, the actual notes at least. The contents of the notes, if asked are sometimes given over. When he was asked for the contents of those notes he gave them over. As far as this evidence that Mr. Jones talks about I want to address them real quick. One is, they continue to peddle the idea that Dunn's alibi and his mother's alibi was the same. It wasn't. Gary Dunn said I went to my mother's house, my mother and my sister-in-law agree. I went to Walmart first, dropped my wife off to work took the kids to school, went to my mother's house worked a little bit, went to Lowe's, went to my apartment to eat lunch and then went to the gas station to get cigarettes and then went back to my mother's house. His mother says we went to AutoZone, B&W Darden El Vet and Lowe's. Dunn never said that. The fact that Frost found that Ms. Chenoweth's details of her alibi were wrong doesn't do anything to Dunn's recollection. Dunn never said the thing that Dunn's mother said. So the fact that they're lumped together consistently is just not fair. Dunn's alibi was different. In fact, if Frost would have determined that the transactions had occurred on 12-15, then we have a problem. Then Dunn was wholly inaccurate. I don't think that it necessarily rises to the level of a lie, but it certainly would raise some questions, I presume. But that's my other point, too. Frost knew that that alibi may be not entirely ironclad. So what did he do? He polygraphed Gary Dunn. And this is where the lobbying, the Frost lobbying of Mr. Glover really draws my ire a bit. Exhibit TT, actually, is the best evidence of this. It shows the entire polygraph examination and what Frost and Glover talked about afterwards. But an interesting line that Mr. Jones left out of his brief is Frost saying, after Bill Glover said, well, if it's not Kevin Jones, I'll be totally amazed. So in furtherance of this conspiracy, note my sarcasm, Frost says, well, I just think that we need to eliminate, securely eliminate everybody else. And I think so far we've got everybody. And I think we just systematically go down the line and knock them out. This is not a conspiracy. This is a thorough investigation. As far as the DNA match, I made this point in the brief, and I'll make it again. Miss Dierksmeyer's blood was at the scene. Her blood was tested to see if it matched her DNA. The match was 5.17 quintillion. 1 in 5.17 quintillion. Dunn's match was 1 in 2,100. Which means if you pull 2,100, Mr. Weberson-Swagg knows this better than me, if you pull 2,100 people, one of them is the murderer. That's not a match. On top of that, there were two unidentified male contributors to the DNA. They've never said that two men murdered Miss Dierksmeyer. There's no evidence that she was murdered by two men. So this DNA match is not accurate. The one thing they didn't mention today, but they mentioned in their briefs and throughout this litigation, is Dr. Poe's statement that, quote, Gary Dunn murdered Nona Dierksmeyer. Even after we got an affidavit from Dr. Poe saying, I would never have said that. That's not what I do. They continue to tell this court that that's what Dr. Poe did. Dr. Poe never made that statement. Even if he had made the statement, it occurred three years after the murder. A full two years, I believe, after the acquittal. Now, back to the legal claims. Again, Jones admits probable cause exists against him, which makes sense. He does nothing to negate the evidence against him. Nothing to negate the blood on the lamp, the fact that he had opportunity, the fact that he had the motive. None of that. And the fact that he was acquitted eliminates the Brady claim, because this court said, and I quote, assuming appellants failed to there was no Brady violation because appellees were not convicted. And that's based on Strickler v. Green out of this. I thought Brady only applied to prosecutors. No, sir. This circuit is, I think, one of the few that applies it to police officers. Well, there's this other Supreme Court case that has a stricter standard approved for police officers who don't turn things over to prosecutors. Yeah, you're right. I can't remember the applicant. It starts with an A. Oh, you're close. I can't think of it either. But Brady, of course, is strict liability. That case, that's the standard we're talking about. That is not strict liability. I think it requires bad faith if I remember correctly. Yeah, I think that's Youngblood I think is the Supreme Court case. So all these briefs, every time you say Brady, you mean Youngblood? No, I mean Brady. Because Brady was easier to say, no, Brady applies in this case to police officers. No, we apply Youngblood. I've written opinions that do that. Well, then, it requires a conviction either way for any Brady violation. Because Brady and Youngblood are put into the same category is my understanding of that. But the field notes, if this were to go to trial, if it was a prosecutor, the failure to disclose the field notes is strict liability vis-a-vis conviction. It requires reversal. If Youngblood applies in the 1983 against the police officer, it has to be malicious. And a reversal. They both need a reversal because they're both due process violations. And the due process is the right to a fair trial. I'm not so sure, but I'm more sure about the bad faith. Every time you folks say Brady, I'm thinking that's not what it is. I could swear that there's an 8-cert case where it applies Brady to police officers, but I'll have to go back and research that. But it's about a fair trial. Stickler vs. Green says that it's whether there's a reasonable probability that the suppressed evidence would have produced a different verdict. As far as the arguments, and I'll stick with Brady since I know we're talking about Youngblood a little bit, but Jones' arguments are old to this court, and y'all dismissed them before. In fact, you dismissed them in Livers. Any idea that the Fourth Amendment due process obligation requires a police officer to release exculpatory evidence pre-trial is not clearly established in this court. And that's what Livers said. As far as QI, that's the same thing. There's a split of authority and the 8th Circuit doesn't acknowledge that there's a pre-trial right to disclosure of exculpatory evidence. So considering that there's no conviction, considering that probable causes established had never been negated, it eliminates just about every claim that's possible here. As far as a minimal investigation, the district court was correct. Scouring the country, or I said scouring the country, scouring the country for a DNA lab that can test this condom wrapper is not a minimal investigation. Remember that when the condom wrapper was given to the state crime lab, Frost was asked, do you want to fingerprint it or do you want you eliminate the other? And the state crime lab said that was a reasonable choice to choose fingerprinting over a DNA sample. Now, as far as any potential minimal further investigation after arrest, there's no case in the 8th Circuit that requires that. The closest that this court has ever came to that is Olinger v. Larson, in which y'all cited the Thompson case out of the 1st Circuit, which in Thompson's a little bit different since it was a warrantless arrest. But in Thompson, the court said, following a legal warrantless arrest based on PC, an affirmative duty to release only arises if the arresting officer ascertains beyond a reasonable doubt that probable cause is unfounded. And that leaves perhaps a state malicious prosecution claim, which says that you have to have probable cause and it has to be continued, or at least that's the idea. And if we really want to have a discussion about who has more evidence against whom and whether or not Dunn negates probable cause against Jones, you look at all the evidence against Jones. I listed it all out. And you look at Dunn's alibi, which wasn't even proven false, and a DNA match that occurred two years after the criminal trial of Jones. And you're left with, there's nothing that Jones has said to negate probable cause. And as such, and the fact that he was acquitted, eliminate any cause of action that he may have. He may have. Thank you. Very well. Mr. Rosenzweig? Good morning. You may proceed. Thank you, Your Honor. I'm Jeff Rosenzweig and I represent Gary Dunn. And, of course, I associate myself with all the statute of limitation arguments and things of that nature, but I want to deal with Mr. Dunn specifically. Whatever you think about what Frost and Bacon may have done, or the city of Russellville may have done, the idea that Gary Dunn somehow conspired with them to frame Kevin Jones is absurd, and there is no evidence of it of any significance. What they're alleging as evidence is that Gary Dunn denied killing Nona Dirksmeyer. He presented he was told to come up with, he needed to find out where his whereabouts were, so he tried several weeks later, and so he tries to reconstruct where he was some two weeks later through banking records and that type of thing. Completely proper. Secondly, and even more ludicrously, the allegation that I and my co-counsel as appointed counsel years after Mr. Jones' acquittal interview state's witnesses is somehow evidence of Dunn's conspiracy against Jones years earlier is ridiculous. I mean, it just simply doesn't make any sense logically. It doesn't make any sense temporally. Again, we were appointed counsel. Another thing that's important to realize with regard and this goes to the statute of limitations Dunn had two trials. April of 2010 the month of April 2010 for three weeks and the month of January 2011 for three weeks. And the prosecuting attorney it's a different prosecutor, a special prosecutor beat us over the head with these alleged discrepancies in the various Dunn family members renditions of where they were. That all came out in the April 2010 so gag order or no gag order, the Dunn trials were absolutely public proceedings and there's nothing that could have stopped them from raising the issue there. The malicious prosecution how in the world Gary Dunn could have maliciously prosecuted anyone he had no power to accuse anyone he didn't accuse anyone else there's no allegation. All he did was say, I didn't do it and this is where I think I was. That's all. That can't possibly and it's those statements plus some reference to a completely inadmissible polygraph examination and Mr. Dunn has heart issues plus my meeting with Frost years later this is supposed to be the conspiracy and I think I've run out of time so I'll sit down. I would point out to the court the probable cause affidavit of Mark Frost contains an outright lie. He stated that Kevin Jones fingerprints were on the base of the lamp, the part of the lamp that was used to bludgeon Dierksbyron dead. That's just not true. When you make an affidavit you have a choice to tell the truth or lie. He lied. Why is his DNA on that condom wrapper? And that meeting with Frost years later was a continuation of Frost's commitment. His prints were not on the lamp at all or they weren't on the base? They weren't on the base. He had a palm print on the bulb, the fragile part of the bulb that he didn't remember touching and the reason he didn't remember touching it, he was in shock. These are facts that need to be determined in a trial. Well, we thank both sides for the arguments. The case is submitted and we will take it under consideration.